**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SERVI-TECH, INC.,

    *Plaintiff,*

vs.

CLINTON BURMEISTER,

    *Defendant.*

Case No. 16-1130-EFM-GLR

**MEMORANDUM AND ORDER**

Plaintiff Servi-Tech, Inc. ("Servi-Tech") is a Kansas corporation with its principal place of business in Dodge City. Servi-Tech employed Defendant Clinton Burmeister from 2003 until 2014. Servi-Tech sued Burmeister in the District Court of Ford County, Kansas alleging that Burmeister violated the Kansas Uniform Trade Secrets Act ("KUTSA") and breached the non-compete and non-solicitation clauses of his employment contract. Burmeister timely removed the action to this Court. Burmeister was hired in Iowa, worked in Iowa, and was supervised by a manager who was located in Iowa. And so he moves to dismiss the action for lack of personal jurisdiction (Doc. 4). He claims that his contacts with Kansas are so minimal that this Court cannot exercise jurisdiction over him. Burmeister also argues that Servi-Tech failed to plausibly allege a KUTSA violation and accordingly, the Court should dismiss that claim. For the reasons

stated below, the Court finds that it has personal jurisdiction over Burmeister and Servi-Tech adequately alleged a breach of the KUTSA. Burmeister's motion is denied.

## I.      Factual and Procedural Background

Servi-Tech is a Kansas corporation headquartered in Dodge City. In February 2003, Servi-Tech hired Burmeister to provide soil consulting services. Burmeister executed an employment agreement with Servi-Tech that is silent as to where the agreement is to be performed and does not include a forum selection clause. Burmeister was an Iowa resident when he was hired and he remains an Iowa resident today. Every customer that Burmeister served for Servi-Tech was located in Iowa. Burmeister has been to Kansas twice. In September 2003, he came to Kansas for two days of new employee orientation. In January 2004, he came to Kansas to pick up his work vehicle and other equipment. During his employment, Burmeister attended regional Servi-Tech meetings in Nebraska.

As a Servi-Tech employee, Burmeister had frequent contact with the main office in Dodge City. His wages and benefits were managed out of the Dodge City office and although much of his training occurred outside of Kansas, the curriculum and content for that training originated from Kansas. In addition, Burmeister utilized a pickup truck, 4-wheeler, computer equipment, sampling supplies, tools, and other equipment procured and distributed to him through Servi-Tech's Dodge City office.

Burmeister's employment for Servi-Tech ended in August 2014. He then started doing business as Burmeister Seeds and Services. Servi-Tech alleges in its petition that since starting his own business, Burmeister "has used confidential information to access data regarding grid-mapping services for Servi-Tech customers held by SST and attempted to lock Servi-Tech out of that data."

Burmeister moves to dismiss Servi-Tech's claims, arguing that the Court cannot exercise jurisdiction over him and that Servi-Tech failed to state a claim for a violation of the KUTSA.

## II.     Legal Standard

In response to Burmeister's motion to dismiss for lack of personal jurisdiction, Servi-Tech bears the burden of showing that jurisdiction over Burmeister is appropriate.[1] In a pretrial motion to dismiss, when the matter is decided on the basis of affidavits and other materials, Servi-Tech is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[2] If Servi-Tech makes such a prima facie showing, then Burmeister must "present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable."[3] The Court will accept the allegations in Servi-Tech's complaint as true to the extent that Burmeister does not controvert them with his exhibits.[4] If the parties present conflicting affidavits, the Court will resolve the disputes in Servi-Tech's favor.[5] But only well pleaded facts, and not merely conclusory allegations, will be taken as true.[6] Servi-Tech must support its jurisdictional allegations with competent proof once Burmeister has challenged them here.[7]

---

[1] *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[2] *Id.*

[3] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (internal quotation mark omitted).

[4] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[5] *Id.*

[6] *Id.*

[7] *Id.* at 1508 (citing *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such a motion, the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[10] The Court must accept all of the factual allegations in the complaint as true.[11] But the Court need not afford such a presumption to legal conclusions.[12] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[13]

### III.  Analysis

#### A. Personal Jurisdiction

In a diversity action, the Court's jurisdiction over a defendant depends on Kansas law.[14] Servi-Tech must show that (1) the exercise of jurisdiction is permitted by Kansas's long-arm

---

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678-79.

[12] *Id.*

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

[14] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

statute; and (2) the exercise of personal jurisdiction comports with the Due Process Clause.[15] "Kansas's long arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process principles."[16] Thus, the long-arm statute inquiry collapses into the Due Process analysis.[17] The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum state."[18] If minimum contacts exist, the Court must find "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[19]

   *1. Minimum Contacts*

The minimum contacts requirement can be met in two ways: general or specific jurisdiction. Servi-Tech only alleges that the Court has specific jurisdiction over Burmeister. Specific jurisdiction depends on a relationship between the forum and underlying controversy.[20] The relationship must arise out of contacts that Burmeister himself created with Kansas, and the Court must look at Burmeister's contacts with the actual forum, not at his contacts with persons who reside there.[21]

Servi-Tech brings claims for both the tort of misappropriation of trade secrets and breach of contract. The standard for demonstrating that Burmeister was purposefully active in Kansas is slightly different for those two causes of action. In tort cases, the question is whether Burmeister

---

[15] *Id.* (citing *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir 2010)).

[16] *Id.* (citing *OMI Holdings,* 149 F.3d at 1090).

[17] *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[18] *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[19] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (citations omitted).

[20] *Id.* at 919.

[21] *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475).

purposefully directed his activities at Kansas.[22] Under the purposeful direction test, Servi-Tech must show an intentional action that was expressly aimed at Kansas with knowledge that the brunt of the injury would be felt there.[23] In contract cases, the inquiry is whether Burmeister purposefully availed himself of the privilege of conducting business in Kansas.[24] A defendant purposefully avails himself of the privileges and protections of a state's laws if he "deliberately engages in significant activities within a State . . . or has created continuing obligations between himself and residents of the forum."[25] In either case, the requirement of purposeful activity in a forum ensures "that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts."[26] While the tests are slightly different, the gist is that for the Court to exercise specific jurisdiction in this case, Burmeister's conduct and connection with Kansas must render it foreseeable that he could reasonably be haled into a Kansas court.[27]

Servi-Tech advances the following facts in support of its argument that Burmeister had minimum contacts with Kansas. He contracted to work for a Kansas company, with oversight from Kansas managers and used supplies and equipment procured by and distributed from the Kansas office. Twice Burmeister came to Kansas, once for training and once to pick up a vehicle and other equipment. And most importantly, Burmeister intentionally injured a Kansas

---

[22] *Dudnikov*, 514 F.3d at 1071.

[23] *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014).

[24] *Id.*

[25] *Burger King*, 471 U.S. at 475-76.

[26] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (internal quotation marks omitted).

[27] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

-7-

company. He committed breach of contract and misappropriated trade secrets. Although he allegedly committed these acts in Iowa, Servi-Tech argues that the injuries were felt in Kansas: Burmeister's violations caused their company—a Kansas company—to lose business and profits.

Under both tort and contract standards, these contacts are sufficient to meet the threshold for minimum contacts supporting jurisdiction. Burmeister could have reasonably expected that the brunt of his misappropriation of Servi-Tech's trade secrets would be felt in Kansas. And by entering a contract with Servi-Tech and benefitting therefrom, Burmeister "availed himself of the forum and should have anticipated that he might be haled into court there in the event of a contractual dispute."[28] Burmeister's two trips to Kansas, the fact that his wages and benefits were processed in Kansas, and the reality that his violations would adversely injure Servi-Tech's home office all support a finding that Burmeister had minimum contacts with Kansas.[29] Burmeister availed himself of Kansas and potential legal action here was foreseeable to him. His relationship with Kansas was not random, fortuitous, or attenuated. Accordingly, the Court finds that Burmeister had sufficient contacts with the state of Kansas.

 2. *Fair Play and Substantial Justice*

Even though Burmeister had sufficient contacts with Kansas, the Court still must ensure that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' "[30] The relevant inquiry is whether the Court's exercise of personal jurisdiction is

---

[28] *Marcus Food*, 671 F.3d at 1168.

[29] *See id.* at 1167-70; *Equifax Servs., Inc. v. Hitz*, 905 F.3d 1355, 1358-59 (10th Cir. 1990).

[30] *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"reasonable in light of the circumstances surrounding the case."[31] Burmeister has the burden of showing that the Court's exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, and such cases are rare.[32] Traditional notions of fair play and substantial justice comprise five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the shared interest of the several states in furthering fundamental social policies.[33] The Court will consider each of these factors as they relate to this case.

*(a) Burden on the Defendant*

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."[34] This concern is especially heightened when the defendant is from another country.[35] But in modern society, it is not overly burdensome for a party to defend itself in a state where it is economically active.[36] Indeed, the burden is relatively slight for a party to litigate in a nearby state.[37]

Burmeister argues that he would be significantly burdened if proceedings were to move forward in Kansas. He claims that all his witnesses—and most of Servi-Tech's witnesses—

---

[31] *OMI Holdings*, 149 F.3d at 1091. (internal quotation marks omitted).

[32] *See Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013); *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009).

[33] *Rusakiewicz*, 556 F.3d at 1102 (citing *Burger King*, 471 U.S. at 476).

[34] *OMI Holdings*, 149 F.3d at 1096.

[35] *Id.*

[36] *Bartile Roofs*, 618 F.3d at 1162.

[37] *Id.*

would be located in Iowa. His supervisor and customers are all located in Iowa. The allegedly misappropriated trade secrets involve Iowa real estate and soil. According to Burmeister, every person and occurrence related to this case is located almost 500 miles away from Wichita, Kansas.

The Court recognizes that Burmeister would be burdened by traveling to Kansas to litigate this matter.[38] But the reasonableness inquiry is conducted on a sliding scale: the burden of litigating in a forum must be weighed against the defendant's contacts with that forum.[39] Burmeister traveled to Kansas for training, and he traveled to Kansas to take possession of a work vehicle. He signed on to work for a Kansas company, and benefited from that company's employment for many years. In light of these contacts with Kansas, the Court does not find that the exercise of jurisdiction imposes too onerous of a burden on Burmeister. This factor weighs only slightly in favor of Burmeister.

*(b) The Forum State's Interest in Resolving the Dispute*

Kansas has "an important interest in providing a forum in which [its] residents can seek redress for injuries caused by out-of-state actors."[40] And a state's interest is also implicated when the resolution of the case requires the application of its laws.[41]

Servi-Tech, a Kansas corporation, alleges injuries caused by Burmeister, and out-of-state actor. Kansas has a significant interest in ensuring that its citizens' trade secrets are not

---

[38] *Cf. Benton*, 375 F.3d at 1079 (noting that burden was significant where a Canadian defendant had no property, conducted no business, and had no employees in the foreign state.).

[39] *TH Agric. & Nutrition, LLC v. ACE European Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

[40] *OMI Holdings*, 149 F.3d at 1096 (citing *Burger King*, 471 U.S. at 483).

[41] *Bartile Roofs*, 618 F.3d at 1162.

misappropriated.[42]  It has a significant interest in ensuring that its citizens' contracts are not breached.  The parties have not addressed which forum's law would apply to the contract dispute;[43] however, the resolution of the trade-secrets claim would involve the application of Kansas law.  For these reasons, this factor weighs heavily in favor of Servi-Tech.

*(c) Plaintiff's Interest in Obtaining Convenient and Effective Relief*

This factor requires the Court to determine whether Servi-Tech could receive convenient and effective relief in another forum.[44]  This factor would weigh heavily in Servi-Tech's favor if its chances of recovery would be greatly diminished if it was forced to litigate in another forum due to that forum's laws.[45]  Servi-Tech does not allege that it would be prejudiced by litigation in Iowa.  And indeed, this Court sees no reason why an Iowa court could not capably resolve this case.  This factor weighs in favor of Burmeister.

(d) *Interstate Judicial System's Interest in Obtaining the Most Efficient Resolutions*

The inquiry here is "whether the forum state is the most efficient place to litigate the dispute."[46]  To make this determination, the Court will look at the location of witnesses, the

---

[42] In anticipation of this argument, Burmeister also moved to dismiss the KUTSA claim.  For reasons given later in this Order, that motion is denied.

[43] Kansas law probably would not apply to the contract dispute.  The Court must apply Kansas's choice of law rules for contract disputes.  Under Kansas choice-of-law rules, the *lex loci contractus* doctrine requires the Court to apply the law of the state where the contract is made.  *Bettis v. Hall*, 852 F. Supp. 2d 1325, 1334 (D. Kan. 2012) (citing *Found. Prop. Invs., LLC v. CTP, LLC*, 37 Kan. App. 2d 890, 894-95, 159 P.3d 1042, 1049 (2007)).  A contract is made where the last act necessary for its formation occurs.  *Novack v. Mut. Of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 534, 28 P.3d 1033, 1039 (2001).  There are no allegations as to where Burmeister's employment agreement was executed.  However, Burmeister alleges that he has only travelled to Kansas twice in his life, and neither of those occasions were in order for him to execute a contract.

[44] *OMI Holdings*, 149 F.3d at 1097.

[45] *Id.*

[46] *Id.*

location of wrong underlying the lawsuit, which forum's law governs the dispute, and whether jurisdiction is necessary to prevent piecemeal litigation.[47]

Burmeister claims that all of his witnesses, and most of Servi-Tech's witnesses, are located in Iowa. He also notes that the alleged wrongdoing occurred exclusively in Iowa. But Kansas law does apply to the trade secrets claim, and Servi-Tech claims that it has witnesses located in Kansas and Oklahoma. Given these facts, this factor does not weigh heavily in either party's favor.

*(e) The Shared Interest of the Several States in Furthering Fundamental Social Policies*

Under this factor, the Court considers "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies."[48] The key question is whether jurisdiction in Kansas affects the substantive social policy interests of other states.[49] Burmeister avers that this factor is irrelevant to this case, and Servi-Tech fails to address it all. The Court agrees that this factor his little relevance. Neither forum has a fundamental social policy at stake in this dispute.

In sum, one factor weighs in Burmeister's favor and one factor weighs heavily in Servi-Tech's favor. The other three factors do not tip the scales either way. Neither party has made a compelling case for or against jurisdiction under the above framework, but only one party was required to. Burmeister had the burden of showing that this Court's exercise of jurisdiction over him was so unreasonable as to offend due process. He has failed to do so here.

---

[47] *Id.* (citations omitted).

[48] *Id.*

[49] *Id.*

Burmeister purposefully directed his actions towards Kansas, and the brunt of his conduct was felt there. This Court's exercise of jurisdiction is not unreasonable and does not offend traditional notions of fair play and substantial justice. Accordingly, the Court denies Burmeister's motion to dismiss for lack of personal jurisdiction.

### B. Trade Secrets Claim

Burmeister also argues that Servi-Tech failed to state a plausible claim that he misappropriated trade secrets in violation of the Kansas Uniform Trade Secrets Act. A trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[50]

In alleging a KUTSA violation, a party must "come forward with some showing that the information alleged to be a trade secret meets the definition.[51] For obvious reasons, Servi-Tech need not plead its trade secrets in detail. Yet, the trade secret must be defined with enough precision to separate it from general skill and knowledge possessed by others.[52] On the face of its petition, Servi-Tech fails to adequately allege a violation of the KUTSA. The petition alleges only that Burmeister "used confidential information to access data regarding grid-mapping services for Servi-Tech customers held by SST and attempted to lock Servi-Tech out of that

---

[50] K.S.A. § 60-3320(4).

[51] *Paradigm All., Inc. v. Celeritas Tech., LLC*, 659 F. Supp. 2d 1167, 1185 (D. Kan. 2009).

[52] *Bradbury Co. v. Tessier-duCros*, 413 F. Supp. 2d 1209, 1220-21 (D. Kan. 2006).

data." This paragraph is the first and last time that SST is mentioned in the petition. The Court does not even know what "SST" stands for. The petition provides no information as to how the alleged trade secret derived economic value or what reasonable efforts Servi-Tech took to maintain its secrecy.

But Servi-Tech's claim is saved by its response to Burmeister's motion to dismiss. Or, more accurately, Servi-Tech's claim is saved by the forgiving standard under which the Court will consider additional facts asserted in a response brief as long as they do not contradict the petition.[53] In its response, Servi-Tech claims that the SST program stores data on Servi-Tech's customer's farmland and crops and generates information reports. These reports save Servi-Tech time and labor, and are not shared with other companies. Servi-Tech further alleges that the information cannot be readily ascertained by other persons and that Servi-Tech uses a password program to keep the information reports from non-employees. These facts adequately allege the existence of a trade secret that Burmeister misappropriated. The compilation and use of information provided an economic benefit to Servi-Tech, was not known to other persons, and Servi-Tech took reasonable efforts to maintain its secrecy. And Servi-Tech alleges that Burmeister improperly misappropriated that information.

Burmeister argues that Servi-Tech is merely alleging the misappropriation of confidential information, which is not actionable under the KUTSA. True, KUTSA only prohibits misappropriation of trade secrets, and not confidential information.[54] But Servi-Tech is not complaining solely of the fact that Burmeister took confidential information. Rather, Servi-Tech

---

[53] *E.g.*, *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) ("[I]t might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint.").

[54] *Wolfe Elec., Inc. v. Duckworth*, 293 Kan. 375, 384, 266 P.3d 516, 523 (2011).

described a program that stored data and generated information reports. It was the compilation and use of the information—not just the information itself—that derived economic value to Servi-Tech. With the facts viewed in the light most favorable to Servi-Tech, the petition and response state a plausible claim for the misappropriation of trade secrets. Burmeister's motion to dismiss this claim is denied.

### IV. Conclusion

By contracting to work for a Kansas company, benefiting from that company, frequently communicating with that company, and allegedly injuring that company following his employment, Burmeister has purposefully availed himself of this forum. In addition, this Court's exercise of jurisdiction does not violate Burmeister's right to Due Process. Lastly, Servi-Tech has adequately alleged a violation of KUTSA. Thus, the Court denies Burmeister's motion to dismiss (Doc. 4).

**IT IS THEREFORE ORDERED** that Burmeister's Motion to Dismiss for Lack of Jurisdiction (Doc. 4) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 13th day of October, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE